**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SHARON M. SHOUL,                  :   Civil No. 1:21-CV-00836
                                  :
       Plaintiff,                :
                                  :
       v.                        :
                                  :
SELECT REHABILITATION, LLC,       :
                                  :
       Defendant.                :
                                  :   Judge Jennifer P. Wilson

## MEMORANDUM

Before the court is Defendant's motion to dismiss pursuant to Rule 12(b)(6), or in the alternative, for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.  (Doc. 12.)  This action was brought by Plaintiff, Sharon M. Shoul ("Shoul"), to recover damages for alleged violations of the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Family Medical Leave Act ("FMLA"), the Pennsylvania Human Rights Act ("PHRA"), defamation, and public policy violations against Defendant, Select Rehabilitation, LLC ("Select"), based on Defendant's alleged conduct while Defendant employed Plaintiff.  (Doc. 10.)  Select has moved to dismiss Counts 2, 4, 5, 6, 7, 8, 10, and 12 of Shoul's amended complaint.  (Doc. 12, p. 2.)[1]  The court finds that Shoul has failed to plausibly allege the counts

---

[1] For ease of reference, the court utilizes the page number from the CM/ECF header.

subject to Select's motion to dismiss.  For the reasons set forth below, Select's motion to dismiss will be granted.  (Doc. 12.)

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to her amended complaint, Shoul is a resident of York County, Pennsylvania, who was employed by Select, a company with a principal place of business in Hanover, Pennsylvania.  (Doc. 10, ¶¶ 3–4.)  Shoul began working for Select as a Speech Language Pathologist on or about April 1, 2020 at Hanover Hall.  (*Id.* ¶ 5.)  Prior to Select employing her, Shoul worked for Genesis Rehab Services and Functional Pathways at the same location beginning in June 2013.  (*Id.*)  Since 2008, Shoul claims that she has worked at Hanover Hall, an entity owned by the Wilmac Corporation.[2]  (*Id.* ¶ 6.)

Shoul began feeling ill during her shift on April 20, 2020, and her symptoms worsened throughout the night.  (*Id.* ¶ 18.)  However, she didn't have a fever in the morning before getting ready for work or when she arrived at work.  (*Id.* ¶ 19.)  Shoul reported her symptoms to her supervisor, who told her to leave the building and await physician approval to return to work.  (*Id.* ¶ 20.)  Later that afternoon,

---

[2] This statement seemingly conflicts with Shoul's assertions that she has been employed by Select since April 1, 2020 and was previously employed by Genesis Rehab Services and Functional Pathways since 2013.  Shoul then asserts that despite being separate business entities, Hanover Hall and Select are an integrated employer (for purposes of her FMLA claim).  However, the court notes that this assertion is a legal conclusion, which has been disputed by Select.  Therefore, this is not a factual allegation entitled to an assumption of truth on a motion to dismiss.

Shoul's supervisor advised that she had spoken with the regional manager at Select—Tara Sidwar ("Sidwar")—who was confident that Dr. Keller, the physician at the facility, would just allow Shoul to return to work.  (*Id.* ¶ 21.)  On April 22, 2020, Shoul developed a low-grade fever, received a COVID-19 test, and was told by Dr. Keller that she could not return to work until she received her COVID-19 test result.  (*Id.* ¶ 22.)

On April 23, 2020, Shoul contacted Sidwar to obtain protocols for time off during the pandemic.  (*Id.* ¶ 23.)  On April 24, 2020, Shoul received a positive COVID-19 test result.  (*Id.* ¶ 24.)  Shoul then filed for Workers Compensation on April 28, 2020.  (*Id.* ¶ 26.)  On May 7, 2020, Dr. Keller cleared Shoul to return to work on May 11, 2020 with limited hours the first few days.  (Doc. 10-7, p. 2.)  However, Betsy Ernst ("Ernst")[3] told Shoul that Human Resources ("HR") had to approve Shoul's return to work.  (*Id.* at 4–5.)  On May 11, 2020, HR Representative Rick Wurglitz told Shoul that she could return to work on May 13, 2020.  (Doc. 10, ¶ 30; Doc. 10-8.)

Shoul returned to work on May 13, 2020, but felt ill after three hours.  (Doc. 10, ¶ 31.)  Shoul then alleges that a doctor yelled at her about an evaluation she previously completed and that she cried throughout the remainder of her shift.  (*Id.*

---

[3] It is not clear from the complaint what Ernst's job title or position is, but based on the exhibits attached to the complaint, the court infers that Ernst in some manner supervised Shoul and/or handled scheduling for services that Shoul and other therapists provided at Hanover Hall.

¶¶ 31–32.)  Shoul worked the following day, May 14, 2020, but continued to experience COVID-19 symptoms.  (*Id.* ¶ 34.)  She reported these concerns to Ernst, who suggested she talk to Dr. Keller and get retested for COVID-19.  (*Id.*)  Shoul saw another doctor that evening who tested her for COVID-19 and instructed her to quarantine at home until she received the results. (*Id.* ¶ 35.)  Shoul informed Ernst of the doctor's instructions, but Ms. Ernst told her that she could return to work regardless of the doctor's instructions.  (*Id.* ¶ 36.)

On May 15, 2020, Shoul elected to heed her doctor's instructions and informed Select's HR that she would quarantine at home until she received her COVID-19 test results.  (*Id.* ¶ 37.)  Traveler's Insurance then informed Shoul that she would receive workers compensation from April 22, 2020, to May 12, 2020.  (*Id.* ¶ 38.)  On May 18, 2020, Ms. Ernst told Shoul, "I was hoping you would hear today [apparently referring to Shoul's doctor clearing her to return to work].  I think as long as you are feeling better you should be able to work."  (*Id.* ¶ 39; Doc. 10-12, p. 3.)

On May 19, 2020, Shoul received a positive COVID-19 test result and informed Dr. Keller.  (*Id.* ¶ 40.)  Dr. Keller told Shoul he would reassess her condition on May 22, 2020.  (*Id.*)  On May 22, 2020, Shoul reported to Dr. Keller that she was continuing to experience serious COVID-19 symptoms.  (*Id.* ¶ 41; Doc. 10-13.)  Dr. Keller responded by ordering a chest x-ray and bloodwork, and

listing Shoul's return to work date as "unknown." (*Id.*; Doc. 10-13.) Shoul

applied for leave pursuant to the FMLA. (*Id.*)

On May 26, 2020, Shoul received a letter from Select HR approving her for

Family Medical Leave Act (FMLA) leave from May 15, 2020, to May 28, 2020.

(Doc. 10, ¶ 43; Doc. 10-15.) On May 29, 2022, Shoul emailed HR to advise that

Dr. Keller was retesting her for COVID-19 and would release her to work when

she tested negative. (Doc. 10, ¶ 44.) From May 28, 2020, to June 2, 2020, Ernst

and Shoul exchanged numerous text messages about the status of Shoul's test

results, how she was feeling, and the number of evaluations that needed to be

completed at Hanover Hall. (Doc. 10-17.)

Around June 1 or 2, 2020, Select posted a Speech-Language Pathologist

position in Hanover, PA on Indeed, a website for applicants and employers to

exchange job postings and applications. (Doc. 10, ¶ 46; Doc. 10-18.) On June 3,

2020, Shoul received a phone call from Select HR Manager, Andrea O'Bryant,

terminating her position effective immediately. (Doc. 10, ¶ 47.) Ms. O'Bryant

told Shoul "it was nothing personal, but that [Select] needed to open it up to hire

someone who could show up to work." (*Id.*) Ms. O'Bryant also sent Shoul an

email with a letter attached, stating that Shoul exhausted all of her time off benefits

on May 28, 2020, but advised HR that she would need additional time off due to

her medical circumstances. (Doc. 10-19, p. 3.) Additionally, the letter advised that

Select was unable to hold her position and that Should was terminated effective immediately, but instructed her to contact HR as soon as she was able to return to work so Select could evaluate their business needs to determine if there would be a mutually acceptable position available. (*Id.*)

On June 18, 2020, Shoul received a negative COVID-19 test result. (Doc. 10-20.) Shoul then informed Select and Ms. Ernst that she was now available to return to work. (Doc. 10, ¶ 50.) Neither Select nor Ms. Ernst ever replied to Shoul. (*Id.*)

Shoul believes that Select received one applicant for the position Select posted on Indeed. (Doc. 10, ¶ 51.) The applicant, Danielle Balint, was 25 years old and a new graduate at the time she was hired. (*Id.*) Select hired Ms. Balint on or about the end of July 2020. (*Id.*)

Shoul claims to have the following disabilities: "COVID-19, anxiety, breathing issues, gastro disorder, nausea, and COVID long haul medical issues." (Doc. 10, ¶ 54.) Shoul dual filed a charge on November 6, 2020 with both the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (Doc. 10, ¶ 55.) The EEOC undertook an investigation for both entities pursuant to a work-sharing agreement. (*Id.*) Shoul received a right to sue letter from the EEOC dated February 24, 2021. (Doc. 10-21.)

Shoul claims that certain former coworkers, including Richard Gladfelter, TR aide, Pat Henderson, LPN, Jo (LNU), LPN, Robin Ray, LPN, and Megan (LNU), SW, all reported to Shoul that they were told Shoul left work because she was "afraid of COVID," and not that she was fired.  (Doc. 10, ¶ 56.)  Shoul claims Select is responsible for communicating to these coworkers that Shoul quit her job over fear of COVID.  (*Id.*)  Shoul also asserts that Select is responsible for communicating a statement to unnamed third parties regarding Shoul "abandoning her patients."  (*Id.* at ¶¶ 57–58.)

Shoul filed her original complaint on May 8, 2021.  (Doc. 1.)  Select filed a motion to dismiss on July 23, 2021.  (Doc. 9.)  Shoul filed an amended complaint on July 28, 2021, alleging: 1) ADA disability discrimination; 2) ADA disability–hostile work environment; 3) ADA disability retaliation; 4) PHRA disability discrimination; 5) PHRA disability–hostile work environment; 6) PHRA disability retaliation; 7) FMLA interference; 8) FMLA retaliation; 9) Violation of the ADEA; 10) PHRA–age discrimination; 11) Violation of Pennsylvania public policy (workers compensation retaliation and wrongful discharge); and 12) Pennsylvania common law defamation–slander/libel.  (Doc. 10, ¶¶ 60–166.)  The amended complaint is now the operative pleading in this case.  On August 11, 2021, Select filed the instant motion to dismiss, with the supporting brief following on August 12, 2021.  (Docs. 12, 13.)  On August 13, 2021, Shoul filed a brief in

opposition. (Doc. 15.)  Select timely filed a reply brief.  (Doc. 16.)  Thus, this motion is ripe for review.

## JURISDICTION

The court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.  Further, venue is appropriate because Plaintiff resides in the Middle District of Pennsylvania and the action detailed in the amended complaint occurred in the Middle District of Pennsylvania.

## STANDARD OF REVIEW

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to

relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

### DISCUSSION

Select argues that Shoul: (1) failed to state a viable claim for hostile work

environment under the ADA and PHRA; (2) failed to exhaust her administrative

remedies with the Pennsylvania Human Rights Commission ("PHRC"); (3) is

ineligible to assert claims under the Family and Medical Leave Act ("FMLA");

and 4) failed to state a claim for defamation.  (Doc. 12, p. 1.)  Accordingly, Select

moves to dismiss Counts 2, 4, 5, 6, 7, 8, 10, and 12 of the amended complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for a

more definite statement under Federal Rule of Civil Procedure 12(e).  (*Id.*)  The

court will address these arguments seriatim.

### A. Shoul Failed to Plausibly Allege a Claim for Hostile Work Environment Under the ADA and PHRA.

Select moves to dismiss Shoul's claims for hostile work environment under

the ADA and PHRA because Shoul has not alleged a pattern of behaviors

amounting to a cognizable offense.  (Doc. 13, pp. 6–8.)  Shoul counters that she

has sufficiently pled the elements for hostile work environment under the ADA

and PHRA by detailing a series of events that Should alleges trivialized her

COVID complaints and harassed her about returning to work.  (Doc. 15, pp. 8–12.)

In its reply brief, Select contends that a supervisor contacting an employee about

the employee's ability to return to work does not establish a hostile work

environment.  (Doc. 16, pp. 1–4.)

Both the ADA and PHRA provide that employers may not discriminate

against employees because of disability.  42 U.S.C. § 12112(a); 43 PA. STAT. ANN.

§ 955.  In both federal and Pennsylvania courts, a plaintiff's claims under the ADA

and PHRA are treated as coextensive.  *Kelly v. Drexel University*, 94 F.3d 102, 105

(3d Cir. 1996).  In addition, the PHRA's definition of disability is coextensive with

the definition of disability under the ADA.  *Id*.  Therefore, the court will interpret

plaintiff's PHRA claim for hostile work environment consistent with courts'

interpretation of such claims under the ADA.

A claim for a hostile work environment requires a showing that the plaintiff

is a qualified individual with a disability; the plaintiff was subject to unwelcome

harassment; the harassment was based on the plaintiff's disability or request for an

accommodation; the harassment was sufficiently severe or pervasive to alter the

conditions of the plaintiff's employment and to create an abusive or hostile

working environment; and that the employer knew or should have known of the

harassment and failed to take prompt effective remedial action.  *See Frost v. City*

*of Phila.*, 839 Fed. App'x 752, 758 (3d Cir. 2021); *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999).

To determine whether a work environment is hostile or abusive such that it altered the conditions of a plaintiff's employment, a court must look at all the circumstances. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). These circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. A claim for harassment or hostile work environment under the ADA is interpreted like a claim for harassment or hostile work environment under Title VII. *Walton*, 168 F.3d at 667. "[The] standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code," and claims involving "ordinary tribulations of the workplace" should not survive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Furthermore, "the conduct must amount to discriminatory changes in the terms and conditions of employment." *Id*. at 786.

Shoul has not plausibly plead a claim for hostile work environment because Select's alleged conduct is not objectively hostile or abusive. Taking all the allegations in Shoul's amended complaint as true, the allegations do not constitute a claim for hostile work environment.

First, Shoul's hostile work environment claim fails because the incidents were not severe or sufficiently frequent.  The allegations in the complaint relate to Ms. Ernst's repeated requests for updates on Shoul's health and a timeframe for her return to work.[4]  (Doc. 10, ¶¶ 23, 36, 39; Doc. 10-7, Doc. 10-11, Doc. 10-12, & Doc. 10-17.)  Even accepting that Shoul felt pressure to return to work when she felt ill, such requests do not rise to the level of a claim for hostile work environment because they represent ordinary pressures of the workplace.  *See Walton*, 168 F.3d at 667, n.4 (where an employee's supervisor threatened to fire her for not attending a work event, called the employee manic-depressive, called the employee ten days consecutively when she was first hospitalized, asking when she would return to work, stated in a deposition that she believes people with mental illness have impaired judgment, and forbade the employee's staff from speaking with her about a work program while the employee was hospitalized, the court held that all of the alleged incidents fell far short of meeting the *Harris* standard); *see also Wright v. Providence Care Ctr., LLC*, No. 2:17-CV-747 2019 U.S. Dist. LEXIS 162909 (W.D. Pa. Sep. 24, 2019), affirmed, 822 F. App'x 85 (3d Cir. 2020) (finding repeated phone calls to an employee on leave, requests to

---

[4] The amended complaint also includes an incident in which Shoul alleges that a doctor yelled at her, causing her to cry.  (Doc. 10, ¶ 31.)  Even construing the facts in the light most favorable to Shoul, she has not alleged that the incident was in any way related to her disability or a request for an accommodation.  Therefore, this incident cannot be the basis for a hostile work environment claim.

submit medical testing, and encouraging employee to return to work early insufficient to demonstrate a change in the conditions of employment).

Employees who miss work for significant periods of time will often be asked to return to work as soon as possible. This is especially true of health care workers during a pandemic. When employers repeatedly request that employees return to work, those requests do not constitute abuse or harassment, much less "severe" abuse or harassment. Furthermore, even a cursory review of the text messages exchange between Shoul and Ms. Ernst reveals that Ms. Ernst's conduct was not objectively hostile. *See* Doc. 10-7, Doc. 10-11, Doc. 10-12, & Doc. 10-17.

Shoul was only employed by Select for approximately two months, from April 1, 2020 to June 3, 2020. (Doc. 10, ¶¶ 5, 47.) During this brief time, Shoul was frequently absent from work due to illness. (*Id.* ¶¶ 18–20, 31, 34, 37, 47). In fact, Shoul only worked from approximately April 1–21, and May 13–14. (*Id.*) Shoul reports incidents in which supervisors requested she return to work on April 23, May 14, May 18, and May 28–June 2 (*Id.* ¶¶ 23, 36, 39; Doc. 10-17.) However, as previously noted, requests to return to work do not constitute "abuse" for the purpose of a hostile work environment claim.

Next, Shoul does not plausibly allege a hostile work environment because she was not physically threatened or humiliated. Shoul alleges no incidents in which she was physically threatened, and only one incident in which Shoul was

plausibly humiliated—the incident in which a doctor yelled at her, causing her to cry. (Doc. 10, ¶ 31.) While this could arguably be considered humiliating, it is a singular claim in the complaint that is not alleged to be related to her disability or a request for accommodation. A hostile work environment must be "permeated with discriminatory intimidation." *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 116 (2002). Shoul's isolated incident fails to meet the legal standard to allege a hostile work environment.

Finally, Shoul did not allege that Select unreasonably interfered with her work performance. Other than the one occasion in which a doctor yelled at her, Shoul's remaining allegations do not plausibly allege that she endured hostility or abuse that affected her work performance. To the contrary, Shoul alleges that Select repeatedly asked her to return to work so that she could satisfy vital patient treatment needs. (*Id.* ¶¶ 23, 36, 39.) Asking an employee to return to work is the opposite of interference with work performance. In fact, Shoul's allegations show Select was intent on Shoul performing her work without interference because of their critical staffing needs. (*Id.*)

Thus, the allegations in the complaint, viewed in the light most favorable to Shoul, are not sufficient to state a claim for a hostile work environment. For the foregoing reasons, Shoul's hostile work environment claims at Counts 2 and 5 of the amended complaint will be dismissed.

### B. Shoul's Claims Under the PHRA Will Be Dismissed Because Shoul Failed to Exhaust the PHRA's Administrative Remedies.

Select moves to dismiss Shoul's PHRA claims because Shoul failed to exhaust her administrative remedies as required by law, because the Pennsylvania Human Rights Commission ("PHRC") has exclusive jurisdiction over claims for a period of one year, and Shoul filed suit before the expiration of that one-year period.  (Doc. 13, pp. 8–9.)  Shoul contends that when she exhausted her administrative remedies with the EEOC, she concurrently exhausted her administrative remedies with the PHRC, or alternatively, that this court may exercise jurisdiction where the administrative remedy is inadequate.  (Doc. 15, pp. 12–13.)

Claimants may only bring an action under the PHRA after exhausting the PHRA's administrative remedies.  *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001) (citing *Clay v. Adv. Comput. App., Inc.*, 559 A.2d 917, 920–21 (Pa. 1989)).  Exhausting the PHRA's administrative remedies requires, at a minimum, that a claimant bring an action alleging discrimination under the PHRA only after one year has elapsed from the date the charge was filed with the PHRC.  *Id*.

Shoul claims she dual filed a charge with both the EEOC and PHRC on November 6, 2020.  (Doc. 10, ¶ 55.)  Shoul filed her original complaint on May 8, 2021.  (Doc. 1.)  Should then filed an amended complaint on July 28, 2021.  (Doc.

10.)  Only six months elapsed between the time that Shoul filed her charge with the PHRC and the time she filed her original complaint.  By failing to allow the PHRC one year to investigate her charge prior to filing her complaint, Shoul failed to exhaust her administrative remedies under the PHRA.

Shoul raises two arguments to avoid her failure to follow the PHRA's requirements.  (Doc. 15, pp. 12–13.)  First, Shoul claims that because EEOC and PHRC have a work-sharing agreement, the EEOC's right to sue letter should permit a claim under not only the ADA, but also the PHRA.  (Doc. 15, p. 12.)  Second, Shoul claims that this court may exercise jurisdiction where the administrative remedy is inadequate.  (*Id*.)  Both arguments fail.

First, Shoul fails to cite any legal authority to support the claim that a work-sharing agreement between the EEOC and PHRC should supersede the PHRA's administrative requirements.  (Doc. 15, pp. 12–13.)  The mere fact that a work-sharing agreement between the EEOC and PHRC exists does not mean that failure to exhaust administration remedies is excused.  On the contrary, both the Pennsylvania Supreme Court and the Third Circuit Court of Appeals have held that compliance with the EEOC's administrative procedures does not satisfy the PHRA's administrative requirements, and that claimants must avail themselves of the PHRC's administrative process.  *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997); *Fye v. Cent. Transp. Inc.*, 409 A.2d 2, 5 (Pa. 1979).  The

work-sharing agreement between the EEOC and PHRC satisfies filing requirements, but not the requirement to exhaust administrative remedies.

Second, Shoul argues that this court "may exercise jurisdiction where the administrative remedy is inadequate," citing *Borough of Green Tree v. Board of Property Assessments*, 328 A.2d 819 (Pa. 1974).  In *Borough of Green Tree*, the Supreme Court of Pennsylvania held that administrative exhaustion should not be required where "the administrative process has nothing to contribute…and there are no special reasons for postponing its immediate decision[.]"  *Borough of Green Tree*, 328 A.2d at 824.  For Shoul to suggest that the PHRC has nothing to contribute to Shoul's claim would contradict the intention of the Pennsylvania legislature and binding precedent requiring the exhaustion of the PHRA's administrative remedies.  *Burgh*, 251 F.3d at 471 (citing *Clay*, 559 A.2d at 920–21 (Pa. 1989)).  Shoul's claim also fails to allege any special harm that merits treatment different from that of any other PHRA claimant.

By failing to exhaust her administrative remedies under the PHRA, Shoul has failed to state a claim upon which relief can be granted for Counts 4, 5, 6, and 10 of the amended complaint.

### C. Shoul's Claims Under the FMLA Will Be Dismissed Because Shoul is Not an Eligible Employee.

Select argues that Shoul's claims for FMLA interference and retaliation should be dismissed because Shoul is not an eligible employee under the FMLA

because she was not employed for at least twelve months prior to seeking leave

pursuant to the FMLA.  (Doc. 13, pp. 9–11.)  Shoul argues that she worked for

Hanover Hall since 2008 and that because Hanover Hall and Select are an

integrated employer, Shoul is an eligible employee under the FMLA.  (Doc. 15, p.

13.)  Alternatively, Shoul argues that Select is estopped from arguing that Shoul is

not subject to the FMLA under an equitable estoppel theory because it previously

approved Shoul for leave under the FMLA.  (*Id.* at 14.)

The Family and Medical Leave Act of 1993 ("FMLA") provides that eligible

employees are entitled to 12 workweeks of leave during any 12-month period

under certain conditions, such as the employee experiencing a serious health

condition.  29 U.S.C. § 2612(a)(1).  To state a claim for interference with benefits

under the FMLA, a plaintiff must plead that: (1) he or she was an eligible

employee under the FMLA; (2) the defendant was an employer subject to the

FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the

plaintiff gave notice to the defendant of his or her intention to take FMLA leave;

and (5) the plaintiff was denied benefits to which he or she was entitled under the

FMLA.  *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 155 (3d Cir. 2017); *Ross

v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014).  For a plaintiff to state a claim for

retaliation under the FMLA, a plaintiff must plead that he or she: (1) invoked the

right to FMLA-qualifying leave; (2) suffered an adverse employment action; and

(3) the adverse action was causally related to the invocation of these rights.  *Capps*, 847 F.3d at 152; *Ross*, 755 F.3d at 193.  Thus, both causes of action require a showing that the plaintiff was eligible for leave under the FMLA.  Eligible employees are employees who have been employed for at least 12 months by the employer with respect to whom leave is requested, and have worked at least 1,250 hours for the employer in the last 12 months.  29 U.S.C. § 2611(2)(A).

Here, Shoul was not employed by Select for 12 months.  She commenced employment with Select on or about April 1, 2020 and her employment was terminated on June 3, 2020.  (Doc. 10, ¶¶ 5, 47.)  Therefore, Shoul is not entitled to FMLA from Select based on her length of employment.  Shoul first argues that Select and Hanover Hall are an integrated employer and she has thus been employed since 2008.[5]  Alternatively, Shoul argues that Select is estopped from arguing that she is not entitled to leave pursuant to the FMLA under an equitable estoppel theory.  (Doc. 15, p. 14.)

Equitable estoppel is available in the FMLA context.  *Leese v. Aldephoi Village, Inc.*, 516 F. App'x 192, 193 (3d Cir. 2013).  To plead equitable estoppel, a plaintiff must claim: "(1) a misrepresentation by another party; (2) which [s]he

---

[5] As discussed above, *see* note 2, *supra*, Shoul's legal conclusion that Select is an integrated employer is not entitled to the assumption of truth.  Whether Select is an integrated employer, and the integrated employer theory's applicability to determine the length of employment has been challenged by Select and Shoul has not provided legal authority to support this proposition.

reasonably relied upon; (3) to [her] detriment." *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987).

Shoul's equitable estoppel claim fails because she has not demonstrated detrimental reliance. To demonstrate detrimental reliance for an FMLA claim, the plaintiff must show that she changed her position in reliance on the defendant's statement that she was entitled to FMLA leave. *Palan v. Inovio Pharmacuticals, Inc.*, 653 F. App'x 97, 102 (3d Cir. 2016).

Shoul fails to allege that but for Select's mistaken assertion that she was entitled to FMLA, she would not have taken medical leave. The amended complaint alleges quite the opposite; Shoul considered her medical leave to be critical, and insisted that she stay home to convalesce beginning on May 15, 2020. (Doc. 10, ¶ 37.) Shoul did not even apply for medical leave until May 22, 2020. (Doc. 10-13.) Moreover, Shoul alleges no facts that demonstrate she believed that her medical leave was entitled to FMLA protections. (Doc. 10.) It is clear that if Shoul were told she was not entitled to FMLA leave, she still would not have returned to work before being cleared by her doctor and receiving a negative COVID test. Therefore, without facts indicating that she was relying on Select's mistaken assertion, Shoul has not demonstrated that she relied on Select's assertion

to her detriment.  By failing to allege detrimental reliance, Shoul's equitable estoppel defense against dismissal of her FMLA claims fails.

For the foregoing reasons, Shoul's claims for FMLA Interference and Retaliation under Counts 7 and 8 of the amended complaint will be dismissed.

### D. Shoul Has Failed to Plausibly Allege a Claim for Defamation.

Finally, Select argues that Shoul has failed to state a claim for defamation under Pennsylvania law because she failed to identify the source and substance of the communications at issue.  (Doc. 13, pp. 11–13.)  Shoul counters that she adequately plead a claim for defamation.  (Doc. 15, p. 15.)

Shoul contends that Select communicated to her colleagues that she left work because she was afraid of COVID, and that her refusal to return to work was tantamount to abandoning her patients.  (Doc. 10, ¶¶ 56–58.)  Shoul heard these statements directly from her coworkers and, without providing supporting facts, asserts that her coworkers were merely repeating statements communicated to them by Select, without identifying who made these statements.  (*Id.*)  Shoul contends that these statements are false and per se defamatory.  (*Id*. ¶ 157.)

A claim for defamation under Pennsylvania law requires that the plaintiff prove, *inter alia*, that the defendant publicized the defamatory communication.  42 PA. CONS. STAT. § 8343(a)(2).  In addition, the plaintiff must identify the source and substance of the communication at issue.  *Fiedler v. Shady Grove Reprod. Sci.*

*Ctr., P.C.*, 2014 U.S. Dist. LEXIS 96262, at *11-12 (M.D. Pa. July 26, 2014).  The

necessary substance of a defamation claim includes the date on which a particular

statement was made, and the circumstances under which the statements were

allegedly made.  *Maynard v. Sugarloaf Twp.*, No. 06-0845, 2012 U.S. Dist. LEXIS

116845, at *9 (M.D. Pa. Aug. 20, 2012) (dismissing a claim that failed to allege the

date that the defamatory statement was made); *Turk v. Salisbury Behavioral*

*Health, Inc.*, No. 09-6181, 2010 U.S. Dist. LEXIS 41640, at *10-12 (E.D. Pa. Apr.

27, 2010) (dismissing a claim failing to identify the circumstances under which the

defamatory statement was made).

By failing to identify the source and substance of the allegedly defamatory

statements, Shoul has failed to adequate plead a claim for defamation.  Shoul also

fails to identify the circumstances under which Select allegedly uttered these

statements, including the date in which they were communicated.  Instead, Shoul

argues that the court should simply conclude that the allegedly defamatory remarks

Shoul heard from her coworkers after her dismissal must naturally flow from some

unidentified Select representative, at some unidentified time.  This the court cannot

do.  Accordingly, Count 12 of the amended complaint will be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, Doc. 12, will be

granted.  Counts 2, 4, 5, 6, 10, and 12 of the amended complaint will be dismissed

without prejudice and Counts 7 and 8 are dismissed with prejudice.  Because the

court will grant Defendant's motion to dismiss, Defendant's alternative motion for

a more definite statement will be denied as moot.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: June 13, 2022